

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed December 5, 2023**

_____
**United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | ) | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| WILLIAM RALPH CANADA, JR., | ) | Case No. 23-30568-MVL-7 |
| | ) | |
| DEBTOR. | ) | |
| | ) | |

### ORDER REGARDING TRUSTEE'S OBJECTION
### TO DEBTOR'S CLAIMED EXEMPTIONS

CAME ON BEFORE THE COURT the *Trustee's Objection to Debtor's Exemptions* (the "**Objection**") [ECF No. 32] filed by the Chapter 7 Trustee, Daniel J. Sherman (the "**Trustee**") on August 14, 2023. The Trustee seeks an order disallowing two of Debtor William Ralph Canada, Jr.'s (the "**Debtor**") claimed exemptions. At a hearing on October 2, 2023, the Court heard oral argument and sworn testimony before taking the matter under advisement. The following shall constitute the Court's ruling.[1]

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).

1

I.  **BACKGROUND FACTS AND PROCEDURAL HISTORY.**

The Debtor filed a voluntary petition commencing this Chapter 7 bankruptcy case on March 27, 2023. *See* ECF No. 1. On April 7, 2023, the Debtor filed official form 106, containing Schedules A/B through J, which describe the Debtor's assets and liabilities in detail. *See* ECF No. 15. On Schedule C, the Debtor listed certain property which he claimed as exempt under the Texas Constitution, including a 70% ownership interest (the "**DAD Interest**") in a corporation called DAD Drilling, LLC (the "**DAD Drilling**"), as well as a homestead exemption in real property described as "+ Aubrey, TX 76227" listed as having a current value of $167,755.00 (the "**Property**"). *Id.*

On August 14, 2023, the Trustee filed his Objection, seeking an order from the Court denying the Debtor's claimed exemptions for both the DAD Interest and the Property. *See* ECF No. 32. The Debtor filed his *Response and Opposition to Trustee's Objection to Exemptions* on September 4, 2023, at ECF No. 33. On October 2, 2023, the Court held a hearing (the "**Hearing**"), whereby counsel appeared for the Debtor and the Trustee. *See* ECF No. 38. The Debtor gave testimony in support of his claimed exemptions. The Court admitted six exhibits submitted by the Debtor. *See* ECF No. 37, Exhibits A–F.

At the hearing, the Debtor testified that he filed a prior Chapter 11 bankruptcy case (the "**Prior Case**") before this Court on September 15, 2015.[2] The Debtor's schedules from the Prior Case indicate that he also claimed the Property as his homestead in 2015.[3] Although Mr. Canada testified that he filed his Prior Case because of a contested claim with the IRS, Frost Bank was the primary creditor in that bankruptcy, and it never raised any objection to his homestead exemption.[4]

---

[2] *See* ECF No. 1 in Bankruptcy Case No. 15-33757-bdh-11 (Bankr. N.D. Tex. 2015).
[3] ECF No. 37-1, p. 1 ("Lot 14, Nail Springs Branch, Aubrey, Texas").
[4] *See* ECF No. 37-2, pp. 1–3.

The Debtor testified that in accordance with his confirmed plan of reorganization in the Prior Case, the Debtor paid nearly all of his creditors in full over the next five years, with the exception of the unsecured portion of Frost Bank's allowed claim.[5] In the intervening period between the conclusion of the Prior Case and the filing of the instant case, the Debtor testified that a number of his assets became worthless and Frost Bank declined to restructure its debt, which ultimately led the Debtor to file the instant case under Chapter 7.

The Debtor testified that DAD Drilling was formed under the Texas Business Organizations Code in 2010. The Debtor owns seventy percent (70%) of DAD Drilling's interests, with the remainder (30%) held by Rodney Johns, a friend of the Debtor's.[6] Although the Debtor originally intended to use DAD Drilling to invest in the energy industry, the only asset which DAD Drilling currently holds is stock in an Irish semiconductor company called IceMos. The Debtor testified that the IceMos stock certificate is held directly by DAD Drilling, LLC, and not by either one of its members. The Debtor testified that IceMos has never issued a distribution to its stockholders, but he believes it will eventually go public.

The Debtor next testified that the Property he claimed as his homestead is known as Lot 14, Nail Springs Branch, which is located on Robinson Canyon Road in Aubrey, TX, 76227. According to the Denton County Appraisal District ("**DCAD**") property records, the Property was purchased on June 20, 2008,[7] and lies adjacent to three other parcels, two of which (Property IDs: 52108 and 52152) are owned by the KCTG Family Trust (the "**Trust**").[8] The Debtor testified that

---

[5] *See* ECF No. 37, pp. 9–42.
[6] The Certificate of Formation provided by the Debtor evinces that the original owners of the Company were two corporate entities, however the Debtor testified that ownership of the Company was later transferred to the Debtor and Rodney Johns in their individual names. *See* ECF No. 37-6, p. 1.
[7] Property ID: 287779 for year 2024, DENTON COUNTY APPRAISAL DISTRICT, http://esearch.dentoncad.com/Property/View/287779.
[8] *See* Property ID: 52108 for year 2024, DENTON COUNTY APPRAISAL DISTRICT, http://esearch.dentoncad.com/Property/View/52108; *see also* Property ID: 52152 for year 2024, DENTON COUNTY APPRAISAL DISTRICT, http://esearch.dentoncad.com/Property/View/52152.

he funded the Trust for his wife's benefit, that he is the sole trustee of the Trust, and that his wife is the sole beneficiary. The Trust, in turn, purchased a house located at 6595 Private Road 2706, Aubrey, TX, 76227 (the "**6595 Tract**"), and the adjacent property known as 6747 Private Road 2706, Aubrey, TX, 76227 (the "**6747 Tract**"). The DCAD property records reflect that the 6595 Tract was purchased in October of 2007 by the Trust, and the 6747 Tract was purchased in April of 2008, approximately two months before the Debtor purchased the Property at issue in the instant case.[9]

The Debtor testified that he purchased the Property to keep anyone else from purchasing it and erecting a house immediately to the north of the 6595 Tract and the 6747 Tract. The Debtor further testified that there is a "pipe and cable" fence on the Property along the northern borders of both the 6595 Tract and the 6747 Tract, extending part-way between the Property and the final parcel that lays adjacent to it, which is known as Lot 13, Nail Springs Branch, also located on Robinson Canyon Road in Aubrey, TX, 76227 ("**Lot 13**"). The Debtor testified that Lot 13 is owned by a third party, and he erected the fence between the Property and Lot 13 primarily to demarcate the property line and keep them from potentially encroaching. The fence does not extend along any portion of the northern border of the Property.

The Debtor testified that he and his wife live together in the house on the 6595 Tract, and that the Debtor considers the three parcels (the Property, the 6595 Tract, and the 6747 Tract) to be one contiguous homestead. While the Debtor has not erected any structures on the Property itself, he testified that he and his wife have plans to either further develop the land or use it for hay and grazing animals in the future. The Debtor also stated that he and his wife have guardianship of three children, ages 8, 10, and 13, who play on the Property regularly. The Debtor further stated

---

[9] *See id.*

4

that the family has a "pet cemetery" located on the Property where he has buried several animals, and that his domestic ducks and turkeys roam to and from the Property freely.

## II. LEGAL STANDARD.

Under section 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case creates a bankruptcy estate comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a). The debtor may then remove certain types of property from the estate by electing to take advantage of exemptions described in federal or state law. *See Hawk v. Engelhart*, 871 F.3d 287, 290 (5th Cir. 2017). "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991).

A debtor must file a list of property claimed as exempt on the debtor's schedule of assets. FED. R. BANKR. P. 4003(a). "A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors … is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." *Id.* 4003(b). "Unless a party in interest objects, the property claimed as exempt … is exempt" and as a result, the property claimed as exempt is not part of the bankruptcy estate. 11 U.S.C. § 522(l); *Hawk*, 871 F.3d at 290. In a hearing on an objection to a claim of exemption, "the objecting party has the burden of proving that the exemptions are not properly claimed" by a preponderance of the evidence. FED. R. BANKR. P. 4003(c); *see also Grogan v. Garner*, 498 U.S. 279 (1991). In determining whether property is exempt, courts consider the law and facts as they existed on the date a debtor filed for bankruptcy. *See White v. Stump*, 266 U.S. 310, 313 (1924).

5

### III. LEGAL ANALYSIS.

#### A. Homestead Exemption

In the instant case, the Trustee objects to the Debtor's claimed exemption in the Property because, he argues, a married couple in Texas may only have one homestead, and the 6595 Tract is listed as an exempt homestead in the DCAD property records, owned by the Trust, but the Property is not. *See* ECF No. 32. Further, the Trustee argued at the Hearing that there is no evidence that the Debtor ever intended for the Property to become a part of the homestead estate because it is undeveloped, and the Debtor has not put the Property to the kind of use that would demonstrate such an intent, such as grazing animals on the land.

The Debtor first responds by arguing that because there were no objections to the Debtor's claimed homestead exemption on the Property in his Prior Case, the legal doctrine of *res judicata* applies to preclude **any** objection to the Debtor's homestead exemption in the instant case. Second, the Debtor contends that because his homestead is a rural homestead, all that is required to impress the whole property with a homestead character is that he "resides on the property and uses it for shelter, recreation, privacy, comfort, and convenience." *See* ECF No. 33, p. 4, ¶ 16 (citing *In re Mitchell*, 132 B.R. 553 (W.D. Tex. 1991)). As such, the Debtor argues that while he has met his burden to make a *prima facie* case in favor of homestead status, the Trustee has wholly failed to meet his burden of presenting any evidence or facts as to how the Debtor's use of the Property is inconsistent with the homestead character, especially given the fact that the Property is contiguous to the 6595 Tract, where the Debtor and his wife reside. *See id.* at ¶¶ 18–22. The Court agrees that the Trustee has not met his burden; therefore, the Court declines to reach the issue of whether the confirmation order in the Prior Case precludes the Trustee's objection under *res judicata.*

6

Under the Texas Constitution, the homestead exemption exists to provide a secure home for a family against creditors. *See Hankins v. Harris*, 500 S.W.3d 140, 145 (Tex. App. – Houston [1st Dist.] 2016, pet. denied); *see also Fairfield Financial Group, Inc. v. Synnott*, 300 S.W.3d 316, 320 (Tex. App. – Austin 2009, no pet.). As described by the Fifth Circuit, "[h]omesteads are favorites of the law and are liberally construed by Texas courts." *In re Perry*, 345 F.3d 303, 316 (5th Cir. 2003). A homestead can belong to either a family or to a "single adult person." TEX. CONST. art. XVI, § 50(a). "Whether a tract of land is protected homestead property is a question of fact." *In re Norra*, 421 B.R. 782, 789 (Bankr. S.D. Tex. 2009). In order to establish homestead rights, no specific writing is needed, but one must prove both a concurrence of usage and intent to claim the land as a homestead. *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App. – Houston [1st Dist.] 1983, no writ).

The initial burden of proof is on the claimant to prove the homestead character of the property. *Id.* (citing *Perry*, 345 F.3d at 311). This burden is a "short hurdle" for debtors. *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992). Once the claimant has made a *prima facie* case in favor of homestead status, courts in Texas will presume the homestead claimant possesses the requisite intent, and the objecting party has the burden of demonstrating that the homestead rights have been terminated. *See Norra*, 421 B.R. at 790 (citing *Bradley*, 960 F.2d at 507; *Perry*, 345 F.3d at 311).

The Court notes the following facts were uncontested: (1) the claimed homestead is rural, not urban, and (2) the tracts the Debtor claims as homestead are adjacent and contiguous. Texas homestead law distinguishes between property that the debtor resides upon and **non-contiguous, separated property**. "A debtor faces fewer legal obstacles when the debtor claims only land **connected** to the debtor's residence as the debtor's homestead." *Norra*, 421 B.R. at 790 (emphasis

7

added). "With a contiguous tract, one can logically extend the establishment of a home and the activities pertaining to the home to the outer boundaries of that tract. Only an imaginary line separates the residence tract from the contiguous property. Hence there is a presumption that such a tract is used for the purposes of a home." *Painewebber Inc. v. Murray (In re Murray)*, 260 B.R. 815, 830 (E.D. Tex. 2001). Furthermore, Texas law "disfavors the severance of contiguous parcels of land into homestead and non-homestead tracts." *In re Michelena*, 631 B.R. 621, 626 (S.D. Tex. 2021). In light of the foregoing, the Court finds that the Debtor is not attempting to claim two separate homesteads (one for his wife and one for him), but rather claiming one family homestead with adjacent, contiguous tracts of land.[10]

Texas courts provide a rather strict standard for severance of contiguous parcels of land into homestead and non-homestead tracts, such that a tract should be severed "only if there is no evidence that the tract is used for homestead purposes." *Michelena*, 631 B.R. at 626 (quoting *Bradley*, 960 F.2d at 509). Courts interpreting facts on this issue have held that evidence that the property contributes to "the comfort, enjoyment, or convenience of the residence or the family … represent distinct enough evidence of a rural purpose [to establish the homestead character.]" *Murray*, 260 B.R. at 830 (gathering cases). Under this liberal standard, several courts have held that acts like exercising on the property or even enjoying the property's aesthetic qualities could impress a homestead. *See id*; *see also Youngblood v. Youngblood*, 76 S.W.2d 759, 761 (Tex. 1934); *Baldeschweiler v. Ship*, 50 S.W. 644, 645 (Tex. Civ. App. 1899, no writ) (quoting *Brooks v. Chatham*, 57 Tex. 31, 34 (1882)).

---

[10] Although it was not discussed in-depth at the Hearing, the Court will note that separate parcels of one family homestead can be titled in different names and still be considered one contiguous homestead. *See Vaden v. Collier*, 253 S.W. 889, 891 (Tex. App.—Ft. Worth, 1923 no writ) ("[T]itle to the separate tracts so constituting parts of the homestead, or some interest therein, must be vested in **some member of the family**."). Section 41.0021 of the Texas Property Code allows title to homestead property to be devised to a trust. The fact that a parcel is so devised for the benefit of one family member and another parcel is titled in another family member's name does not mean that both parcels cannot be considered together to constitute one family homestead in Texas. *See* TEX. PROP. CODE § 41.0021.

The Court finds that the evidence presented by the Debtor is sufficient to sustain his initial burden of proof to demonstrate that the Property has been used for homestead purposes. The uncontested testimony was that the Debtor purchased the Property to keep someone else from building a structure adjacent to their home on the 6595 Tract. The 6595 Tract, the 6747 Tract, and the Property were all purchased within one year's time. The Debtor also testified that he and his spouse raise fowl that roam freely onto the Property, that their children regularly play on the Property, and that they have used the Property for the burial of their pets and other animals. While the Debtor may not have built a structure on the Property, the Debtor invested time and resources into erecting a fence to demarcate the Property line on the eastern side and keep neighbors from encroaching thereon. These actions and uses are generally consistent with the manner in which an appurtenant tract of land is used in conjunction with a rural homestead for the "comfort, enjoyment, or convenience of the residence or the family[.]" *See Murray*, 260 B.R. at 830.

The Debtor further credibly testified that he and his spouse have considered fencing the remainder of the Property in order to graze animals or grow hay on the land, and that it is their intention to erect a structure (such as a barn or shed) on the Property and further develop it at some point. These statements, taken in conjunction with the uncontroverted evidence that the Debtor maintains control over the Property, are sufficient to sustain his burden to demonstrate that the Debtor has the requisite intent to continue to utilize the Property as his homestead. Therefore, the Court concludes that the Debtor has fulfilled his initial burden of proof as to the homestead character of the Property.

Having met his burden to prove *prima facie* that the Property was impressed with the homestead character, the burden then shifts to the Trustee pursuant to FED. R. BANKR. P. 4003(c). The Court again notes that under the standard routinely adopted by courts in Texas, contiguous

parcels of land should only be severed into homestead and non-homestead tracts, "if there is **no** evidence that the tract is used for homestead purposes." *Michelena*, 631 B.R. at 626 (emphasis added). The Trustee offered no substantial evidence to contradict the Debtor's *prima facie* case. Therefore, the Court concludes the Objection to the validity of the Debtor's rural homestead claim should be overruled.

### B. The DAD Interest

Although the homestead exemption was a close call, the Debtor's claimed exemption of his ownership interest in DAD Drilling is not. Notably, the Debtor did not cite any relevant bankruptcy authority on this issue. *See* ECF No. 33, pp. 5–8, ¶¶ 23–28. Indeed, the Debtor fails to cite to any relevant section of the Texas Constitution or Property Code for his so-called "exemption." *Id.* The Debtor even admits that property such as the DAD Interest is not "listed as an 'exempt asset' in Chapter 42 of the Texas Property Code." *Id.* at ¶ 27. Instead, in his Schedule C, the Debtor refers to section 101.112 of the Texas Business Organizations Code, which is a **charging order statute**. *See* ECF No. 15, p. 11. The Debtor bases his claim for exemption on a 2018 article published by the State Bar of Texas on the topic of collecting judgments under state turnover statutes. *See* ECF No. 33, p. 6, ¶ 25. The article posits that "[p]artnership and LLC membership interests are exempt property not subject to a turnover order."[11] Ultimately, the Debtor rests on the proposition that because a charging order is the exclusive remedy by which a judgment creditor may reach an LLC membership interest under state law, and a charging order simultaneously deprives that creditor of the ability to attach, seize, or execute on such a membership interest, such an interest is "effectively" exempt in a bankruptcy context where, as here, there are no distributions of profit to receive. To put it mildly, the Court disagrees.

---

[11] Jeffrey W. Hellberg, Jr. & Jennifer Bartlett, *Elements of the Turnover Statute*, TXCLE ADVANCED FAMILY LAW, 2018 WL 6366522 (2018).

To paraphrase a beloved character from the immortal classic, *Road House*, attempting to exempt an LLC membership interest from a bankruptcy estate is "like putting an elevator in an outhouse — it don't belong."[12] The question before the Court is whether the DAD Interest is ***exempt*** from being considered property of the estate under state law.[13] The charging order statute is ***not*** the equivalent of a state law exemption. A charging order statute exists in large part to protect other members of an LLC from having to share governance responsibilities with someone they did not choose, or from having to accept a creditor of another member as a co-manager.[14] Numerous state court decisions make plain that LLC membership interests are ***non-exempt*** assets under Texas law.[15] Therefore, in the absence of any valid state law exemption under the Texas Constitution or Property Code for an LLC membership interest such as the DAD Interest, the Court hereby concludes that the DAD Interest constitutes non-exempt property of the estate. The Court therefore will sustain the Trustee's Objection to the claimed exemption in the DAD Interest.

### IV.    CONCLUSION.

The Debtor is entitled to his claimed homestead exemption in the Property under the Texas Constitution but is not entitled to claim an exemption in the DAD Interest because such property is not exempt under Texas law. In light of the foregoing, the Court determines that the Trustee's Objection should be sustained in part and denied in part. Therefore, it is hereby

---

[12] ROAD HOUSE (United Artists, Silver Pictures 1989).
[13] *See* 11 U.S.C. § 522(b)-(d); *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.").
[14] *See Bran v. Spectrum MH, LLC*, No. 14-22-00479-CV, 2023 WL 5487421, at *6 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, no pet.).
[15] *See Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 839 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, no pet.) ("A member's ownership interest in a limited liability company is a non-exempt asset."); *see also Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *7 (Tex. App.—Ft. Worth Nov. 9, 2017, no pet.) (holding that membership interests in two separate LLCs were non-exempt assets under state law); *Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 756–57 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (upholding a decision of a trial court appointing a receiver to take possession of an ownership interest in an LLC, which was a non-exempt asset).

**ORDERED** that the portion of the Trustee's Objection pertaining to the Debtor's claimed homestead exemption in the Property known as Lot 14, Nail Springs Branch, which is located on Robinson Canyon Road in Aubrey, TX, 76227, shall be **OVERRULED**; it is further

**ORDERED** that the portion of the Trustee's Objection pertaining to the Debtor's claimed exemption in personal property identified as an ownership interest in 70% of the controlling shares of DAD Drilling, LLC, valued at $176,000.00 on Debtor's Schedule C, shall be **SUSTAINED**; and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.

**###END OF ORDER###**